IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| NORRIS BOSTON, S07401, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 25-cv-1525-DWD |
| | ) | |
| JEREMIAH BROWN, | ) | |
| M. BURTON, | ) | |
| ROBINSON, | ) | |
| JOHN DOE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Norris Boston, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Lawrence Correctional Center (Lawrence), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Plaintiff alleges that Defendant John Doe violated his rights by refusing to honor his request for a gender appropriate strip search as a transgender inmate, and Defendants Robinson, Burton and Brown refused to assist with the situation. Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se*

complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff alleges that on May 6, 2025, Defendant John Doe escorted him to a shower during a shakedown for a strip search. (Doc. 1 at 3-5). He informed John Doe that he identified as transgender and that his institutional identification card specified he should be strip searched by a female, but John Doe refused to honor this request and threatened discipline if Plaintiff did not comply. Ultimately, John Doe forced him to strip and made sexual comments during the visual inspection. Plaintiff further alleges that John Doe touched his buttocks when he reached into the cell to reapply handcuffs. (Doc. 1 at 5).

Plaintiff alleges that shortly after the strip search, Defendant Burton saw him crying and asked why he was upset. He informed Burton of the sexual harassment, but Burton insisted that Lawrence Correctional Center does not accommodate transgender inmates and that nothing would be done. Burton also allegedly threatened Plaintiff that if he created problems, Burton would have other inmates physically attack Plaintiff. (Doc. 1 at 5-6).

On May 6, 2025, Plaintiff wrote Defendant Brown (Warden) to seek assistance, and on May 8, 2025, he wrote the governor's office. (Doc. 1 at 6). Plaintiff alleges that Brown responded by indicating he received the correspondence via the governor's office, but that the search was conducted in accordance with policy. (Doc. 1 at 6). In support of the motion for a preliminary injunction (Doc. 2), Plaintiff attached an excerpt of the prison's Administrative Directives, which state that if an inmate has been identified as

transgender, then they shall be searched by the gender of staff designated on their identification card. (Doc. 2 at 7).

On May 13, 2025, Plaintiff interacted with Defendant Robinson, a mental health provider. (Doc. 1 at 6). He asked Robinson if there was a transgender mental health group at Lawrence, but Robinson said that the prison does not honor transgender specific treatment, and Plaintiff should not have come to Lawrence if that was one of his concerns.

Plaintiff alleges that as a result of the harassment, he suffers from nightmares and he has been required to "get on medicine." (Doc. 1 at 7). Plaintiff faults John Doe for violating the Eighth amendment, the prison's policy on searches, and for committing an assault and battery under state law. (Doc. 1 at 7-8). He faults Defendants Brown and Burton for failing to discipline John Doe or to ensure he was safe. Finally, he faults Defendant Robinson for being deliberately indifferent to his need for mental health care as a transgender inmate. (Doc. 1 at 8). Plaintiff seeks declaratory, compensatory, and injunctive relief.

In support of the complaint, he submitted grievance documents which show that multiple grievances about these issues were deemed emergencies, and that an internal investigation was being conducted. (Doc. 1 at 13-22, 28-30). Plaintiff also submitted affidavits of fellow inmates. (Doc. 1 at 26-27).

Based on the allegations in the Complaint, the Court will designate the following claims:

> **Claim 1:** Eighth Amendment claim against John Doe for the strip search in May of 2025;

>  Claim 2:    Assault and battery claim against John Doe for his conduct during the strip search;
>
>  Claim 3:    Eighth Amendment deliberate indifference claim against Defendants Burton and Brown for their handling of Plaintiff's reports about the strip search;
>
>  Claim 4:    Eighth Amendment deliberate indifference claim against Defendant Robinson for denying transgender specific mental health care.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

<h2 style="text-align:center">Analysis</h2>

**Claim 1**

A violation of the Eighth Amendment consists of two elements: (1) the injury must be objectively serious enough to have deprived the inmate of the minimal civilized measure of life's necessities, and (2) the prison official must have acted with deliberate indifference to the inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "There is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation." Calhoun v. DeTella, 319 F.3d 936, 939 (7th Cir. 2003). Strip searches are generally permissible in the prison context if

conducted for a legitimate penological reason. *See id.* However, a strip search will violate the Eighth Amendment if it is "totally without penological justification" or "conducted in a harassing manner intended to humiliate and inflict psychological pain." *Id.; see also Mays v. Springborn*, 575 F.3d 643, 649-50 (7th Cir. 2009) (strip searches done in view of other inmates, in a cold room, by guards who did not regularly change latex gloves, and who sometimes made demeaning comments, were sufficient to proceed to a jury trial).

Here, Plaintiff's allegations plainly suggest that John Doe conducted a strip search in an unnecessarily harassing and humiliating manner. He also indicates that as a result of the search, he has nightmares and has been required to start some sort of medication.

It is also possible that John Doe's behavior constituted improper verbal harassment, in violation of the Eighth Amendment. Verbal harassment generally does not rise to the level of a constitutional violation, though some harassment may be serious enough to constitute cruel and unusual punishment. *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) (finding that verbal sexual harassment, accompanied by suggestive gestures, that created a risk both from the harasser and fellow inmates, was sufficient to proceed beyond initial review); *Brand v. Oglesby*, 2021 WL 4262447 at *1 (S.D. Ill. 2021) (finding a claim insufficient where plaintiff alleged that a guard ran into his cell, verbally threatened him, and indicated he would deploy pepper spray if plaintiff moved). Some threats may rise to the level of cruel and unusual punishment. *Dobbey v. Ill. Dept. of Corr.*, 574 F.3d 443, 445 (7th Cir. 2009). "The test for what constitutes cruel and unusual punishment is

an objective one. It is not the actual fear of the victim, but what a "reasonable victim" would fear." *Id.*

In *Dobbey*, the Seventh Circuit concluded that a guard hanging a noose in view of an inmate and glaring at the inmate did not amount to cruel and unusual punishment because the incident was promptly investigated and was not accompanied by other threatening conduct. *Dobbey*, 574 F.3d at 445-46. By contrast, the *Dobbey* Court cited to cases that included threats of violence accompanied by physical acts. Notably, in *Irving v. Dormire*, 519 F.3d 441 (8th Cir. 2008), a court found that repeated threats of harm, accompanied by offers to inmates of money and bribes to assault a fellow inmate, were sufficient to make out an Eighth Amendment cruel and unusual punishment claim. The *Irving* Court emphasized that the "repeated and credible" nature of the threats played a factor in the determination that the threats were actionable under the Eighth Amendment. In decisions after *Beal* and *Dobbey*, courts have focused on the frequency of harassment, the likelihood that it created a risk among the prison population, and the existence of a prompt investigation into the matter. *See e.g., Elkins v. Quinn*, 2022 WL 602982 at * 3-6 (S.D. Ill. Mar. 1, 2022) (finding that vulgar and inappropriate comments made by a guard to an inmate in a private setting on a single day were not sufficient to establish an Eighth Amendment claim); *Robinson v. Budde*, 2021 WL 1722857 (N.D. Ill. April 30, 2021) (granting summary judgment to the defendants where the plaintiff alleged he felt humiliated, had insomnia, and isolated himself in his cell for a couple of days as a result of harassment, but there was no evidence the plaintiff sought psychological care, he did not fear a physical attack, and there were no repeated incidents of abuse); *Jackson*

*v. Stolworthy*, 2017 WL 4122786 at *8-9 (S.D. Ill. Sept. 18, 2017) (allowing a harassment claim beyond 1915A review that was premised on repeated harassment over a period of 30 days or more that included allegations about plaintiff's sexuality and included physical gestures).

In addition to having a claim about the harassing nature of the strip search, it is also possible Plaintiff could make out a valid verbal harassment claim due to the nature of the verbal remarks, and the fact that they were accompanied by an alleged physical touching. By contrast, to the extent that Plaintiff claims John Doe violated PREA or internal prison policy, this aspect of his claims cannot proceed because these are not valid claims under § 1983. For now, Plaintiff may proceed on Claim 1 against John Doe under the Eighth Amendment.

**Claim 2**

In addition to the Eighth Amendment claim, Plaintiff alleges that Defendant John Doe's conduct amounted to assault and battery under state law. In Illinois, a defendant can be liable for contacts that are "relatively trivial ones which are merely offensive and insulting." *Cohen v. Smith*, 269 Ill.App.3d 1087, 207 Ill.Dec. 873, 648 N.E.2d 329, 332 (1995) (citation omitted). For now, Plaintiff may proceed on Claim 2, but if the Court later dismisses Claim 1, it will relinquish supplemental jurisdiction over this claim.

**Claim 3**

Plaintiff faults Defendants Burton and Brown for their responses to his alleged attempts to report John Doe's conduct. He claims Burton dismissed his concerns and threatened physical violence if Plaintiff made a big deal out of the incident. While some

verbal harassment is actionable, the Court does not find that Burton's alleged comments rise to the level of actionable remarks where they were stated in isolation and were not accompanied by any physical gestures. The comments, if true, were surely unacceptable, but they simply do not reach the level of a constitutional violation. To the extent that Burton refused to accept Plaintiff's PREA report, there is no private right of action under PREA, so this is not actionable. *See e.g., Sims v. Doe*, 2018 WL 4027632 (S.D. Ind. Aug. 22, 2018); *Bentley v. Baenen*, 2018 WL 1108701 (E.D. Wis. Feb. 27, 2018) ("The PREA does not create a private cause of action in federal court."); *Poslof v. Martel*, 2018 WL 3019916, n.5 (S.D. Cal. June 18, 2018) (The PREA "authorizes the reporting of incidents or rape and sexual abuse in prison, but it does not give rise to a private cause of action by a prisoner."). Additionally, to the extent that Plaintiff complains that Burton failed to follow procedures in the Illinois Administrative Code related to his PREA report, violations of state laws or prison rules or regulations do not give rise to a claim under § 1983. *See e.g. Scott v. Edinburgh*, 346 F.3d 752, 760 (7th Cir. 2003) (Section 1983 protects inmates from constitutional violations, not violations of state laws, prison regulations, or prison policies). Thus, the Court finds no claim against Burton.

As for Brown, Plaintiff alleges Brown was informed of the situation but simply insisted in a memo that the search was performed consistent with policy. This statement about the propriety of the search is contradicted by the Administrative Directive, but a violation of the Administrative Directives does not equate to a constitutional claim. It also appears that despite that single memo, Brown was otherwise responsive to Plaintiff's grievances, deeming them emergencies, allowing an internal investigation, and sending

memos indicating mental health providers would contact Plaintiff. All of these steps weigh against a finding that Brown was deliberately indifferent in this situation, as opposed to merely negligent in a single responsive memorandum when he made a misstatement about the search following policy. As such, the Court finds Claim 3 insufficient to proceed against Brown or Burton.

**Claim 4**

Finally, Plaintiff faults Defendant Robinson for refusing to offer transgender mental health groups and making remarks about transgender care at Lawrence. Though these remarks were likely offensive, they do not rise to the level of an Eighth Amendment violation. Plaintiff's grievance documents attached to the complaint and motion for a preliminary injunction clarify that there are not transgender specific groups at Lawrence (though one may be under development), but that Plaintiff was regularly seen by mental health providers. His ability to access care seems confirmed by his statement he received medication to cope with his distress over the search. Without any further specific information about Plaintiff's need for care, he does not have a viable claim against Robinson for deliberate indifference.

In sum, Claims 1 and 2 may proceed against John Doe, and Claims 3 and 4 are dismissed against Defendants Burton, Brown, and Robinson.

### Motion for a Preliminary Injunction

In the Motion for a Preliminary Injunction (Doc. 2), Plaintiff briefly recaps the factual allegations from the complaint and then requests a transfer to a different prison and placement in protective custody. He claims this is necessary because his rights were

violated by the search on May 6, Defendants Burton and Brown did not do anything about it, he has not been interviewed as he believes he should have been per the Administrative Directives, and he believes his rights will continue to be violated. The Motion is supported by affidavits and grievance documents, as well as excerpts of the Administrative Directives.

To seek a preliminary injunction, a plaintiff must establish: a likelihood of success on the merits of his claim; no adequate remedy at law; and, irreparable harm without the injunctive relief. See Mays v. Dart, 974 F.3d 810, 818 (7th Cir. 2020). As for the first requirement, the Court must determine whether "plaintiff has any likelihood of success— in other words, a greater than negligible chance of winning." AM General Corp. v. DaimlerChrysler Corp., 311 F.3d 796, 804 (7th Cir. 2002). "A movant's likelihood of success on the merits must be strong." Tully v. Okeson, 977 F.3d 608, 613 (7th Cir. 2020). A strong showing typically entails a demonstration of how the applicant intends to prove key elements of his case. Ill. Republican Party v. Pritzker, 973 F.3d 760, 762-63 (7th Cir. 2020); Doe v. University of Southern Indiana, 43 F.4th 784, 791-92 (7th Cir. 2022) (the court is not required to make inferences in the movant's favor for preliminary injunctive relief).

The Court must also decide whether an adequate remedy at law exists and whether the plaintiff will suffer irreparable harm without injunctive relief. Irreparable harm is harm which cannot be repaired. Graham v. Med. Mut. Of Ohio, 130 F.3d 293, 296 (7th Cir. 1998) ("Irreparable harm is harm which cannot be repaired, retrieved, put down again, atoned for. The injury must be of a particular nature, so that compensation in money cannot atone for it."). The Court must then weigh "the balance of harm to the

parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665.

An injunction that seeks an affirmative act by the respondent is a mandatory preliminary injunction and should be sparingly issued. *Mays*, 974 F.3d at 818. If injunctive relief is warranted, the Prison Litigation Reform Act provides that the injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Injunctive relief must be related to issues in the underlying lawsuit. *See e.g.*, *Tatum v. Hunter*, Case No. 22-2411 (S.D. Ill. 2023) (Doc. 16) (denying injunctive relief, where the injunctive relief sought was not narrowly tailored and did not align with the claims in the case) *aff'd in Tatum v. Hunter*, Case No. 23-2253 (7th Cir. May 16, 2024); *Daniels v. Dumsdorff, et al.*, Case No. 19-cv-394 (S.D. Ill. 2019).

A prison transfer is an extraordinary form of relief that delves into the day-to-day control of the prison environment. Plaintiff indicates he has only been exposed to a single strip search that he alleges was improper. He does not indicate that he regularly encounters the defendant who performed the search, nor does he indicate he has had any subsequent issues. At most, he indicates the search had a negative impact on his mental health, but he also admits he received medication for that issue. Furthermore, the likelihood of success of a claim about the propriety of a strip search is incredibly hard to

determine early in a case with very few facts in the record, and the burden of a prison transfer on the prison system is quite high.  As such, the Court does not find this an appropriate scenario for immediate injunctive relief.  There is no obvious risk of ongoing harm, the prison appears to be investigating the issue, and Plaintiff stated he has received medication to address the mental impact of the incident.  Thus, the Motion (Doc. 2) is **DENIED**.

### Disposition

**IT IS HEREBY ORDERED THAT Claims 1 and 2** of the Complaint (Doc. 1) survive against Defendant John Doe (the officer who performed the May 6, 2025 strip search).  By contrast, Claims 3 and 4 are dismissed without prejudice against Defendants Burton, Brown, and Robinson.  The Clerk shall **TERMINATE** Defendants Burton and Robinson, but <u>Brown shall remain in official capacity</u> only to help identify John Doe.

Plaintiff is **<u>DIRECTED to file a notice within 21 days</u>** giving the Court as much descriptive information (nicknames, hair color, height, etc.) as possible about John Doe so that the Warden can assist in identifying this person by name.  Once Plaintiff submits his notice, the Court will set a deadline for Brown to respond with identifying information.

The Clerk of Court is **DIRECTED** to prepare for Defendant Jeremiah Brown (Warden—official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If a Defendant

fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 14 days after a change of address occurs.  Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

Plaintiff's Motion for a Preliminary Injunction (Doc. 2) is **DENIED** for reasons explained above.

**IT IS SO ORDERED.**

Dated: August 15, 2025

/s *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.